Katz-Crank v. Mr. New Live Katz-Crank v. Mr. Wilshensky Katz-Crank v. Mr. Wilshensky Katz-Crank v. Plaintiff I'm still not hearing a plausible factual basis for an improper purpose to this prosecution. The argument you should focus on, the strongest argument in your brief, is all these activities in relation to the press. So you allege defendants assisted request to be published statements in the press and on websites and blogs containing information regarding Katz-Crank's alleged criminal activity, which they knew was false. Isn't that your strongest position? I think so. In fact, even the government says that the prosecutor's statements to the press may be entitled to qualified immunity, not absolute prosecutorial immunity. That's right. I agree with that. And I do think that's the strongest argument in this case. I don't have anything further, Your Honor, unless you do. Thank you. Thank you, Mr. Wilshensky. Ms. Barrow or Ms. Dinges? I don't know which one you are. May it please the Court, I represent the state defendants Marion County and Investigator Traithan are separately represented this morning by Amanda Dinges. Regarding the question of discovery, the state did file a motion to stay discovery after filing its motion to dismiss. There was never any opposition from the plaintiff to that motion. The motion itself stated that counsel for the state reached out to Ms. Katz-Crank's counsel to see if she objected and never got a response. So the district court, noting that the motion to stay discovery was unopposed, granted the motion. There's no argument on appeal that that grant of a stay was an abuse of discretion. Regarding press releases that the prosecutor might have made, even if there is no immunity as to any press release, the plaintiff still has not shown a constitutional deprivation. Now look, that's where I don't understand you. So on pages 32 and 33 of the appellant's brief, there are all these allegations about, you know, these public... Well, the one I read on page 33, defense assisted or caused to be published statements in the press and so on, information, the news, false. Now you say in your brief on page 16, Buckley held that a prosecutor's statements to the press may be entitled to qualified immunity, not absolute prosecutorial immunity. And then you make this remarkable statement, But to the extent appellant may have feared that the press statements would inflame the public against her, a jury found her not guilty, meaning there was no harm from the statements and therefore no violation of her constitutional rights. But that's not the only concern she had about the press statements. She was concerned that they ruined her business. And you don't respond to that. You don't respond to that at all. You just assume all she cared about was that the press statements would make her more likely to be convicted, and that just isn't true. Well, even if... As far as there's only one press statement that we know about in terms of its content, the rest of her allegations are simply not... Which is the press activities, the publicity activities of the prosecutors. Again, if the prosecutor... I'm just asking you why you didn't respond. These two sentences, your only response. Well, the immunity that we're asserting is under Section 1983. And so even if her business suffered from these press releases, in what way is her business, the problems with her business, a violation of the Constitution? She's never articulated a claim. If you have government employees who, going outside of the scope of their duties, ruin someone's business with defamatory press releases, you don't think that's actionable? Well, under state law? No, under federal law. Under federal law? Well, if there's a viable federal claim, she has not made it. Why isn't a viable federal claim that public officials acting outside... not entitled to immunity because they were just using the press to try to ruin her? I would not say that she has even adequately... Do you think that's a federal violation? No. Do you think public officials can do that? No. Nobody wants public officials to do that. As far as her case, the case that she has brought, her claims, the court cannot create claims for her. Her claims are that the press statements violated her constitutional rights. That is what we have to deal with. The district court specifically held she has not stated a claim under the Fourth Amendment or the Fourteenth Amendment. She doesn't challenge that on appeal. I don't understand that. You don't think that a person's business, a person's legal practice, and so on, are aspects of property or liberty within the meaning of the Due Process Clause of the Fourteenth Amendment? Under the Fourteenth Amendment... That's a remarkable argument. To the extent the court is asking for possibilities, I'm not here to say that there is simply no viable federal claim. You just said there was no viable federal claim. Under the theories of her complaint, and that's what the district court addressed, that's what the defendants addressed, she articulated her constitutional claims as there was no probable cause for the criminal prosecution. Okay, but this is not an argument in your brief. All your brief makes is the irrelevant argument that she may have feared the press statements would inflame the public against her. Well, and I will say this morning that acknowledging her concern also with the damage to her business, I'll acknowledge that. However, what claim does she make regarding that allegation as to liability under Section 1983? All we can focus on is what she is claiming. That is, what is she stating in terms of violation of any federal right? And so even if we can imagine that she was harmed in other respects, and I'm not going to try to downplay any damage she might have suffered to her business, but we really are limited to what she alleges and then how she has stated her claims. And so with regard to her state law claims, she has across the board stated that every defendant acted outside the scope of his or her authority. Even when given the chance to replead her allegations, all she does is pile on additional adverbs instead of identifying each defendant and saying what each defendant did and explaining how that was outside a defendant's scope of authority. Well, in her brief, I mean in her brief, in her complaint, count four, paragraphs beginning at 105, Is this her amended or her first complaint? I'm not sure I know. Maybe you know. I've got both complaints. So she's talking about, pardon me, you have both complaints. Well, which do you want to talk about? Well, the court had a question about her. Which one are you interested in? Oh, okay. Well, with regard to the prosecutor defendants, that would be the first complaint. And all of her allegations have to do with participating in the grand jury and the trial proceedings, which is unquestionably within the scope of employment. There's no reference to these press releases? In her complaint, there are vague references to press releases without... Okay, and then she says, as a direct and proximate result of this conspiracy, Plaintiff was deprived of her rights under the Fourth and Fourteenth Amendments. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, and irreparable harm to her reputation. Well, aren't those actionable harms that may have been caused by these press activities by your clients? Well, looking at her state law claims... At what? Well, okay, the question has to do with press activities. All right? Under state law, there is even... The courts have acknowledged that informing the press is an important function of public officials, that both the Secretary of State and the prosecutor... Well, you do have... I must say, you do have an amusing conception of the duties of your local officials. The one I particularly liked was the notion that your chief investigator has an obligation to advise his constituents? What's that about? The... Is that investigator... Who said? Haskett? I'm sorry, what page are you on? It'll take me a second to find it. Well, I mean, I will acknowledge... She has... The only specific allegation she has made regarding any of the investigators is Defendant Haskett, who she says called clients of the plaintiff to tell them that they shouldn't do business with her. She says that was outside the scope of her employment because it harmed her business. However, she was doing her job, maybe badly, maybe overzealously, but she hasn't shown that that was outside the scope of her employment. It's not as if this defendant went on Facebook and said that Cat's Crank is a bad person or did something entirely as part of her personal life. She never came back at Cat's Crank and says, I'm going to get you... Yes, you say that the chief investigator... Well, it's a little vague, but I think you're saying that the chief investigator was advising his constituents and that this is within the scope of his duties. Okay, and... That's page 22 of your brief. 22. That surprised me. Okay. Right, that sentence is securities investigators and the chief officer were investigating and advising constituents. With regard to the state defendant, the only defendant who is specifically named as advising constituents, that is Haskett. That is what? That is Kim Haskett, who works for the secretary of state. And even if that... Is he advising constituents when he contacts plaintiff's business clients and advised that she was involved in criminal activity and they should no longer do business with her? Well, if... And we don't know exactly what the businesses were or if they were... You didn't even know what they were, but you nevertheless told them not to do business with her? Well, we're aware of what the allegations are and the complaint. And as far as... I don't think you are because you didn't respond to them in your brief. The... This is in the context of scope of employment. And we have this defendant who works for the secretary of state securities... But you yourself concede in your brief that this is a qualified immunity issue. I would disagree. This is a scope of... Well, that's what you said. You cited Buckley. You said Buckley held a prosecutor's statement to the press may be entitled to qualified immunity. All right. That was in the context of a Section 1983 claim. And in Buckley, the comments to the press were not... We have a 1983 claim here. Well, we do. And again, the court found that she did not state a Section 1983 claim. And in any event, she has never argued how those statements to the press violated her constitutional rights. I don't understand you. Do you think it's within the scope of these... these investigators to contact her business clients and tell them they should no longer do business with her? Well, this... When she hasn't been convicted or anything? The concern at the time would have been that this investigator is seeing serious allegations, finding... Yes, but serious allegations aren't a basis for ruining a person's business. A person is entitled to a trial. No, we're talking... I mean, this is incredible. You're saying that investigators can try to... Investigators who are prosecuting someone can try to ruin their business before the trial. How can that be permissible conduct? It's permissible because for purposes of liability under state law, it was within the scope of authority. The scope of authority... But what about your acknowledgment that we're talking here about qualified immunity? Well, the qualified immunity is in the context of the Section 1983 claims. Well, that's what we're talking about. We're talking... As to the state law claims, that's where scope of authority comes in, even if... I don't understand, but when you talk about qualified immunity, you're talking about a federal claim. Correct. She has also brought state law claims, and those fail... I'm not talking about those. I'm talking about the federal claim. Well, and again, her federal claims, say, against this investigator, she has never articulated how that violated her constitutional rights. Look, if you ruin a... If a public official gratuitously sets out to ruin a person's business, that violates the Due Process Clause. That business is property. That is not the... The allegation is not that this investigator wanted to ruin her business. She never alleged that. The bare fact that the investigator called clients could easily be that she just wanted to warn people about doing business with someone who is under investigation. That may be overzealous, but that is still within the scope of authority, and it is not actionable under Section 1983. Okay, well, thank you. Thank you. Thank you, Ms. Barrow. Ms.... Dingus? Yes, Dingus. Good morning, Your Honors. May it please the Court. My name is Amanda Dingus, and I represent the County Defendants, Marion County, and Detective Thomas Traython.   regarding this case, I would also like to thank the State Attorney's Office and the State Attorney's Office of the Indiana Tort Claims Act, Immunities, and Failure to Plead Constitutional Claims. Affirmation in favor of the County Defendants is proper for three reasons. The first reason being that the plaintiff's complaint failed to allege that Marion County maintained a custom policy or practice which directly resulted or caused her alleged constitutional violations, and therefore there was no plausible federal claim against Marion County under Monell. Second, the state law claims against Detective Traython and Marion County are barred under the Indiana Tort Claims Act, and finally, the remaining claims against Detective Traython should be dismissed because she failed to state a claim upon which relief can be granted. The District Court permitted an appellant to plead her claims against defendants twice, yet it's clear that there's no set of facts under which she can prove she's entitled to relief. In order to state a Monell claim against a governmental unit, the plaintiff must factually allege the existence of an official policy, widespread custom, or deliberate act of a decision maker of the municipality or the department. Marion County cannot be held liable unless it acted on account of a constitutionally protected characteristic. Here, plaintiff did not allege any official custom policy or decision of any policymaker that actually caused a deprivation of her constitutional rights, and in fact only offered conclusory statements against all defendants, and never specifically named any defendant or individual. Outside of the bare assertions offered in her complaint, there were no other well-pleaded factual allegations to support a Monell claim against Marion County. With regards to the District Court's reference of 11th Amendment immunity to all defendants, the appellant is correct that 11th Amendment immunity does not apply to municipal defendants. However, an official capacity claim against Detective Traython is the same thing as a claim against the municipal defendant here, Marion County. And so when the court addressed the appellant's failure to state a Monell claim, the decision was the same. The claims against Marion County and Detective Traython in his official capacity were properly dismissed. Detective Traython was acting within the course and scope of his employment, and therefore he's immune from the intentional infliction of emotional distress in malicious prosecution claims under the Indiana Tort Claims Act. To be within the scope of his employment, the conduct must be of the same or general nature of that authorized by the employer. In the original complaint, all actions allege that they were taken within the course and scope of each defendant's employment. In the amended complaint, the same factual allegations exist with the inclusion of language from the Indiana Tort Claims Act to assert the personal claims against the defendant saying that they were acting outside the course and scope. There were no additional facts alleged to support that statement, just the legal conclusion they were outside the course and scope. As such, neither the plaintiff's original complaint nor the amended complaint satisfied... Do you think their press statements were within the scope of their duty? Your Honor, there is no evidence in the plaintiff's complaint or allegations that the press statements were made by Marion County or by Detective Traython. Who were they made by? I'm not sure, Your Honor. But they were not made by Marion County or Detective Traython. And the complaint seems to allude to the allegations that they were made... Well, she says defendants assisted or caused to be published statements in the press and on websites and blogs containing information regarding Katz-Kronk's alleged criminal activity. Is that false? The allegations are too broad, too bare in order to make that determination. What I said was too broad and too bare? The allegations in the complaint. There's no way to possibly determine who the claim specifically is against based on the bare bones conclusory allegations. Even if this court found that the plaintiff made enough factual allegations to survive the Twombly and Iqbal pleading test, dismissal of the state law claims was still appropriate as a matter of law, because Detective Traithan's job as an investigator was created by Indiana Code. The investigator is appointed by the prosecutor's office, works with the prosecutor's office to conduct investigations, and his entire job and role in this case was to investigate allegations that a crime was committed, and that's exactly what he did here. Therefore, the state law claims dismissed against Detective Traithan was proper. As for the malicious prosecution claim against Marion County and Detective Traithan, dismissal was also proper. I see that my time has expired. Marion County and the defendant, Detective Traithan, request that this court affirm the district court's decision. Okay, thank you, Ms. Mejia. Thank you. So, Mr. Wyszynski? Anything further? I'm going to keep this brief, Judge. I don't have a whole lot to say. The only thing I'd like to add is this. When we talk about this issue of scope of employment, I'm at a disadvantage, and I'm at a disadvantage because I don't know, other than what I've pled and what I've alleged and what I think the scope of employment is. So, when Ms. Dingus stated earlier that this is what Mr. Traithan did because this was within the scope of his employment and this is what he was supposed to do, I can't verify that. That's why I need to do discovery on this case and why it was premature to dismiss this claim. We've clearly alleged Fourth and Fourteenth Amendment violations. The Supreme Court said in Buckley, Buckley v. Fitzsimmons, that even if comments to the media are within the scope of employment of a public official, only qualified immunity protects him against a suit for violation of the Fourteenth Amendment. So, do you have to worry, really, about what the precise scope of employment was here? I don't think so. Not under Buckley. I don't have anything further. Let me just ask you about the complaint. So, Ms. Barrow said that your complaint, I don't know if she said exactly this, that it didn't say anything about about these efforts of the prosecutors to contact the press, websites, people she does business with and so on. Is that correct? I don't believe so. I think we've alleged it. It's been a while since I've actually looked at the complaint. But, to be honest, it's long. You've noted it's over 100 paragraphs. I think we mentioned it. Right. Okay. Well, thank you very much. Thank you. Mr. Wilszynski. We thank Ms. Barrow and Ms. Davis. Thank you. So, our next case...